**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**UNITED STATES OF AMERICA**

**vs.**                                                    **5:07cr7/RS
5:08cv251/RS/MD**

**PERRY LEONARD JOHNSON**

---

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 111). The government has filed a response (doc. 143) and the defendant has filed a reply (doc. 158). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

## BACKGROUND

Defendant Perry Leonard Johnson and co-defendant Arthur Williams Jr. were charged with conspiracy to distribute and to possess with intent to distribute more than fifty (50) grams of cocaine base, and distribution of more than fifty (50) grams of cocaine base on a date certain. (Doc. 1). Williams pleaded guilty to count one of the indictment and count two was dismissed. (Doc. 45 & 46). He was ultimately sentenced to a term of life imprisonment. (Doc. 137). Defendant Johnson proceeded

to trial represented by retained counsel Clifford Davis and was found guilty as charged.  (Doc. 58; 63, 94).  The offense conduct involved a purchase by a CI.  As summarized in the PSR, the CI had agreed with Calvin Johnson (the cousin of defendant Perry Johnson) to conduct a three-ounce crack cocaine sale on January 23, 2006.  When the CI called to finalize the details, Calvin Johnson's then girlfriend and now wife Veronica Parker (now Veronica Johnson)  indicated that he had been arrested on child support charges, and that Perry Johnson a/k/a "P.J." would conduct the sale.  A person claiming to be Perry Johnson telephoned the CI and arranged to conduct the sale.  Phone records show several calls between the CI and phones used by Calvin Johnson, Veronica Parker and defendant Perry Johnson.  The CI drove to the agreed upon location, followed by law enforcement.  Co-defendant Arthur Williams, wearing a long dreadlock style wig, approached the CI's vehicle and sat down in the front passenger's seat.  The CI asked "Are you rolling for P.J.?" and Williams indicated that he was.   The ensuing transaction was recorded by video-camera in the rear of the CI's vehicle.  The purpose of the transaction had been to obtain money to secure Calvin Johnson's release from jail.  Veronica Parker collected payment from Perry Johnson after the deal and used the money to get Calvin Johnson out of jail.  Defendant was arrested shortly thereafter.  In addition to the above-described  transaction, two other individuals testified that they had supplied drugs to or purchased drugs from defendant Johnson.

        Based on the testimony at trial, the PSR attributed at least 1.5 kilograms of cocaine base to the defendant.  (PSR  ¶ 15), for a corresponding base offense level of 38.  With a two level adjustment pursuant to U.S.S.G. § 3B1.1(c) due to his supervisory role in the offense, defendant's total offense level was 40.  The twenty-two year old defendant had 9 criminal history points and a corresponding criminal history category of IV.  Based on these calculations, the applicable guidelines range was 360 months to life.

Counsel objected to the quantity of drugs attributed to the defendant and to the role adjustment. At sentencing, the government indicated that it had no objection to a reduction in the quantity of drugs attributed to the defendant. Defendant was thus held accountable for only 60.3 grams of cocaine base, the quantity involved in the controlled buy that had been recorded on videotape. This dropped his base offense level from 38 to 32. The court overruled the objection to the defendant's role adjustment. With a revised total offense level of 34 and a criminal history category of IV, the revised guidelines range was 210 to 262 months imprisonment. Johnson was sentenced at the mid-point of this range to concurrent terms of 236 months imprisonment, followed by concurrent terms of five years supervised release and a special monetary assessment of $200.00. (Doc. 76, 77).

Mr. Davis filed a notice of appeal on defendant's behalf (doc. 80), but then moved to withdraw after receiving electronic notification of the filing of a letter from defendant to the court (doc. 81) that was essentially a complaint about counsel's performance and counsel's failure to communicate with him. (Doc. 85). Mr. Davis was permitted to withdraw and the Federal Public Defender was directed to provide appellate counsel to defendant. (Doc. 87). Chet Kaufman represented the defendant on appeal. (Doc. 89). The only issue raised was the propriety of the adjustment for defendant's managerial role in the offense. The Eleventh Circuit affirmed. (Doc. 109).

Before defendant's appeal was concluded, the district court entered a Notice of Intent to Reduce Sentence, indicating its intent to reduce the defendant's sentence to 184 months based on recalculation of his total offense level at 32 pursuant to U.S.S.G. Amendment 706. (Doc. 103). The parties were afforded 14 days to object, and having received no objection, the defendant's sentence was reduced accordingly on April 25, 2008. (Doc. 105). He is currently serving this 184 month sentence.

Defendant timely filed the instant motion to vacate shortly after the conclusion of his direct appeal.

## LEGAL ANALYSIS

### A. General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Thomas v. United States,* 572 F.3d 1300, 1304 (11th Cir. 2009); *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981); *Hidalgo v. United States*, 138 Fed.Appx. 290 (11th Cir. 2005). Once a matter has been decided adversely to a

defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn,* 365 F.3d at 1234; *Bousley,* 118 S.Ct. at 1611 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could

have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); see also United States v. Patterson, 595 F.3d 1324 (11th Cir. 2010); *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d 997, 1002 (11th Cir. 2007). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)); *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept.*

*of Corrections,* 480 F.3d 1092, 1099 (11ᵗʰ Cir. 2007)*; Chandler v. United States,* **218 F.3d 1305, 1314 (11ᵗʰ Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11ᵗʰ Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11ᵗʰ Cir. 2008); *United States v. Freixas*, 332 F.3d 1314, 1319-1320 (11ᵗʰ Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11ᵗʰ Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11ᵗʰ Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.**

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A

significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer

of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.


B. Defendant's specific claims for relief

      Ground One

      Defendant's first claim is essentially a challenge to the credibility of government witnesses and to statements made by Assistant United States Attorney Michael Simpson. Defendant takes out of context statements made by Assistant United States Attorney Michael Simpson during his closing argument and attempts to attribute nefarious meaning to them. For instance, Mr. Simpson made the following comment:

> On the other hand when these people who have never cooperated with law enforcement until they got arrested come in and weren't real happy about the prospects, but we said look, you either get a lot of hard time, or you cooperate and you get some hard time.

(Doc. 94 at 217, lines 20-24). Defendant asserts that this comment was Mr. Simpson "providing a colloque (sic) as it related to the particulars of defense counsel's failure

to prepare a defense." (Doc. 111, defendant's memorandum of law at 2). Defendant also draws the court's attention to Mr. Simpson's comment regarding the "spoils" system, whereby witnesses are "rewarded" for testifying:

> If you think there's something unfair about the system, and unfair about the way we use the system to try to coerce people to tell the truth to get other people in here that need to be in the courtroom.

(Doc. 94 at 222 lines 9-11). Defendant characterizes that comment as an admission that the government had "coerced" witness testimony in the proceedings. Taken in context, Simpson's statement is clearly one made for dramatic effect. The AUSA had just explained to the jury the process of securing co-conspirator testimony and the choices such witnesses confront. Furthermore, following this statement Simpson notes that the system offers the same opportunity to other defendants and said that perhaps one day the defendant would be in court trying to get things right. (Doc. 94 at 222 line 12-14). Plea agreements that provide for sentencing recommendations in exchange for cooperation, including testimony, are not improper. *United States v. Lowery*, 166 F.3d 1119, 1122 (11th Cir. 1999). In fact, testimony derived through such agreements is common in trials. *See United States v. Thayer*, 204 F.3d 1352, 1357 (11th Cir. 2000). The *Thayer* court went so far as find frivolous an appellant's claim that his conviction should be overturned because it was based in part on testimony obtained through witnesses who had negotiated government plea agreements. *Id.*

Defendant next cites a statement made by Mr. Simpson after the completion of closing arguments when Simpson defends himself against defense counsel's motion for a mistrial. Simpson says:

> One part of the argument is the part where I challenge not the defendant, but the defense. Pointed out that the defense could have called witnesses that were uniquely available to the defendant – or rather to the defense, and chose not to do.

(Doc. 94 at 224, lines 11-15). Defendant offers this statement as proof that counsel failed to investigate potential defense witnesses and refused to assist defendant with his defense strategy. Again, defendant misinterprets the Assistant U.S. Attorney's statement out of context. Mr. Simpson's statement was not an assertion that alibi or exculpatory witnesses actually existed, it was merely a comment to draw the jury's attention to the fact that *if* such witnesses existed, the defense could have called them but chose not to do so.

Defendant states that he told counsel about Lyndell Johnson, who was an eyewitness who would have contradicted the government's charges against him. A defendant's burden to show prejudice burden is heavy where he alleges ineffective assistance in failing to call a witness because "often allegations of what a witness would have testified to are largely speculative." *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (quoting *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980)). Defendant has appended Mr. Lyndell Johnson's sworn declaration to his motion and memorandum as exhibit A. In this declaration, signed on June 6, 2008, Lyndell Johnson asserts that he was present when Veronica Parker (now Veronica Johnson) asked defendant Perry Johnson to sell drugs in order to obtain Calvin Johnson's bail money, but the defendant refused. Arthur Williams, who was also present, volunteered to do it, and defendant purportedly later told Lyndell that he was "not getting into none of Calvin's mess." (Doc. 111, exh. A). Even if accepted as totally true, this affidavit does not provide a complete defense to the charges against the defendant. It leaves room for interpretation about what may have happened after that point. Furthermore, it is contradicted by other evidence against the defendant including undercover recordings, telephone records and the testimony of two other individuals, Parker and defendant's cousin Calvin Johnson.

Finally, defendant notes Mr. Simpson's statement:

If you look at the plea agreements– the letter in her case, the benefit to them is conditioned on telling the truth. We can't, I don't have a magic

> wand, and I'm not a walking lie detector, but we try to set these things
> up so that their motivation will be to tell the truth.

(Doc. 94, at 193, lines 1-6).   Defendant asserts that this establishes that the witnesses' plea agreements have conditions that relate to the content of their testimony, not the truth of the matter.  Again, this is not a fair interpretation of either Mr. Simpson's statement or the standard Northern District of Florida plea and cooperation agreement.  Such agreements make clear  that a cooperating witness must provide truthful and complete information after which the government will make known the extent of defendant's cooperation.  (See, e.g., doc. 45).  As more than one defendant has discovered to his or her disappointment, "cooperation" is not necessarily synonymous with provision of "substantial assistance."   Mr. Simpson's statement does not prove that witnesses were directed to provide untruthful testimony, and defendant is not entitled to relief on this ground.


Ground Two

        Defendant next asserts that he was denied the right to effective assistance of trial counsel where counsel failed to advise him that co-defendant Arthur Williams made a material statement that defendant had absolutely nothing to do with this case.  Defendant asserts that this information was available to both the AUSA and the defense attorney, but was not made personally available to him, and then he could not exercise his compulsory process for obtaining and cross-examining witnesses.  To the extent defendant asserts that the prosecution suppressed the evidence from the defense in violation of *Brady*, he defeats his own assertion through his admission that defense counsel was aware of the evidence.  Furthermore, the government is not required to supply the defendant with his own separate copy of its discovery responses as counsel is acting in his stead.  Defendant points to the transcript of the pre-trial conference where Mr. Simpson stated:

> **I had told Mr. Davis we do not intend to call the co-defendant, Arthur Williams. He has on occasion said that Perry Johnson had nothing to do with it and he has since said Perry Johnson had everything to do with it. So he's sitting in the marshal's cell if anybody wants him. I doubt anybody will.**

**(Doc. 91 at 2-3). Mr. Davis responded "I would ask we keep him there in case my client insists that we call him but I have had the conversation with him about what was disclosed to me." (Doc. 91 at 3). Counsel's comment contradicts his client's claim that he did not know about what Arthur Williams had said. Additionally, an ex parte letter the defendant sent to the district court after sentencing indicates that he asked counsel to call Williams as a witness, but counsel told him this was not a good idea because Williams' statements had changed once he became interested in seeking a reduction in his sentence via his cooperation with the government. (Doc. 81). This further refutes defendant's claim.**

**To the extent that defendant states that defense counsel should have called Mr. Williams to "clarify his position," a decision to do that would have been highly unlikely to produce any benefit to defendant's case in light of Williams' inconsistent statements to law enforcement. Williams was further tainted as a witness due to at least five prior felony drug convictions and his initial denial of his own involvement, despite the fact that he had been captured on video. (See doc. 143 at 8). Furthermore, calling Williams before the jury merely to ask him about his previous exculpatory statement, knowing that he had since admitted both his own and defendant's involvement would be improper. See, e.g., _United States v. Gossett_, 877 F.2d 901, 907 (11ᵗʰ Cir. 1989)(" impeachment by prior inconsistent statement may not be permitted where it is used as a stratagem to get before the jury otherwise inadmissible evidence" (citations omitted)). Absent more compelling evidence, this court will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses. _United States v. Long_, 674 F.2d 848, 855 (11ᵗʰ Cir. 1982) (citing _United States v. Hughes_, 635 F.2d 449, 453 (5ᵗʰ Cir. 1981); _United States v. Johnson_,**

615 F.2d 1125, 1127 (5th Cir. 1980)); *Conklin v. Schofield,* 366 F.3d 1191, 1204 (11th Cir. 2004) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.") (quoting *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995)). Defendant's own letter to the court about his discussions with counsel illustrates that counsel made a reasoned decision not to call Mr. Williams. Even if defendant wishes in hindsight that things had been done differently, speculating that a different outcome was possible, counsel's decision was not unreasonable, and he is not entitled to relief.

## Ground Three

In defendant's third ground for relief he again hones in on statements by the Assistant United States Attorney that allegedly prove that the witnesses against him were coerced to testify and/or that they gave untruthful testimony. For instance, he notes Mr. Simpson's comment to the jury: "I can't tell you that any of these witnesses told the truth." (Doc. 94 at 192, line 24-25). Defendant asserts that if the AUSA did not know if his own witnesses were telling the truth, he should not have relied on their testimony in the criminal proceedings against the defendant. What defendant fails to note is the comment immediately following this statement in which the AUSA tells the jury "You've got to judge that." Simpson was merely reminding the jury that it was up to the jurors to assess the credibility of the witnesses. Furthermore, it would be utterly improper for the government to attempt to bolster any of its witnesses by vouching for their credibility. See *United States v. Bernal-Benitez*, 594 F.3d 1303, 1313 (11th Cir. 2010); *United States v. Diaz,* 190 F.3d 1247 (11th Cir. 1999) (citing *United States v. Sims*, 719 F.2d 375, 377 (1983)). When counsel's statement is taken within context of his closing argument, it cannot be reasonably interpreted as defendant wishes to portray it, as an "admission" that the government knowingly presented the testimony of witnesses who were untruthful.

Defendant next asserts that the government allowed testimony that was motivated by "other than honorable motives." A judgment of acquittal "is not required because the government's case includes testimony by 'an array of scoundrels, liars and brigands.'" *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009) (quoting *United States v. Hewitt*, 663 F.2d 1381, 1385 (11th Cir. 1981)); *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985). Similarly, a judgment of acquittal is not required merely because the testifying witnesses were engaged in criminal conduct similar to that charged in the indictment and are seeking through their testimony to minimize their exposure to criminal liability. *Thayer; Lowery; supra.* The fact that most, if not all of the witnesses had such motivations for their testimony was brought out on cross examination, and it was the role of the jury as finder of fact to determine the witnesses' credibility.

Defendant then proceeds to assail Mr. Simpson's statement: "I don't suggest there's evidence he did. In fact the evidence of these fairly brief phone calls is it didn't take much to get Perry Johnson to do a dope deal. It was the kind of thing he was doing already." (Doc. 94 at 186, lines 22-25). Defendant states that he had no previous adult record for drugs and claims there was no substantial proof that he had done drug deals either at that time or previously. Defendant is correct that the PSR reflects a single conviction for possession of cocaine with intent to sell from 2002 when he was 16 years old. However, the prosecutor's statement was merely his interpretation of the evidence: it was not as if the defendant had been offered significant inducement to commit a crime that he was unwilling to commit otherwise; he readily agreed to participate. The jury was free to accept or reject this inference in their determination of the truth. Furthermore, there was testimony that both the defendant and his mother were involved in selling drugs. (Doc. 93 at 47-49, 75-77, 83). There was no impropriety in this comment and defendant is not entitled to relief.

## Ground Four

Defendant contends that counsel was constitutionally ineffective because he failed to thoroughly investigate potential lines of defense. Among the duties owed by minimally competent counsel is the duty to make reasonable investigations or to make a reasonable decision that makes said investigations unnecessary. *Strickland,* 466 U.S. at 690-91, 104 S.Ct. at 2066. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* However, other than the alleged deficiencies discussed above, which this court has found to be without merit, he has failed to suggest what else counsel could or should have done to investigate his case.

## Additional claim

Although not specifically raised a separate ground for relief, the court notes that on Roman numeral page "x" of defendant's memorandum in the section entitled "summary of argument" defendant asserts that he "was denied the implicit right to testify in his trial because counsel refused to permit him to." (Doc. 111, supporting memorandum at x-xi). This assertion is patently false. At the beginning of the second day of trial, when the defense rested counsel specifically asked the court to inquire of the defendant about his decision to testify. (Doc. 94 at 175). The following colloquy ensued:

THE COURT:    Mr. Johnson, I understand from Mr. Davis that you have decided that you will not testify, is that correct?

The DEFENDANT: Yes, sir.

THE COURT:    I want you to clearly understand that you have the right not to testify and you have the right to testify, and the decision to testify or not to testify is yours alone to make. Have you had adequate time to discuss with your attorney your decision not to testify?

The DEFENDANT: Yes, sir.

THE COURT:         And you are comfortable with that decision?

The DEFENDANT: Yes, sir.

THE COURT:         Like I say, that's your decision, and what you say goes, as far as whether you testify.  Okay?

The DEFENDANT: Yes, sir.

THE COURT:         Do you have any questions about this issue of whether you should testify or not testify?

The DEFENDANT: No, sir.

(Doc. 94 at 175-176).  Defendant's after-the-fact assertion that counsel somehow prohibited him from testifying is clearly refuted by the record.


## CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that

party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 111) be DENIED.

At Pensacola, Florida, this 11th day of May, 2010.


/s/ *Miles Davis*

**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).